UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
IAN MITCHELL, GORDON CLARK, AND
PAT MCGYLYNN

               Intervention Movants,

               -against-           07 Civ. 2318 (DAB)
                              MEMORANDUM & ORDER

ERIC FAULKNER, DUNCAN FAURE,
ALAN LONGMUIR, DEREK LONGMUIR,
LESLIE MCKEOWN, STUART WOOD, AND
ARISTA RECORDS LLC,

               Intervention Defendants.
---------------------------------------X
DEBORAH A. BATTS, United States District Judge.

      Putative Intervenors Ian Mitchell, Gordon Clark, and Pat

McGlynn ("Movants"), one-time members of the 1970s rock group,

the Bay City Rollers (the "Rollers"), move to intervene in

Plaintiffs Eric Faulkner, Duncan Faure, Alan Longmuir, Derek

Longmuir, Leslie McKeown, and Stuart Wood's above-captioned

breach of contract action against Defendant Arista Records LLC

("Arista").  Plaintiffs allege that Defendant breached its 1981

contract with Plaintiffs by refusing to account for and pay the

royalties Plaintiffs are due under that agreement.  Although

Movants were not parties to the agreement in dispute, Movants

assert that they have a cognizable interest in the royalties at

issue pursuant to various alleged oral and written agreements

between the band members and with Arista regarding how the

royalties would be divided among the former Rollers.

In a separate Memorandum & Order of today's date, the Court has addressed Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint, denying the Motion as to Plaintiffs' breach of contract claim, and granting the Motion as to Plaintiffs' additional claims.  As such, Plaintiffs' breach of contract claim is the sole remaining cause of action in this matter.

Plaintiffs oppose Movants' Motion to Intervene as injecting unnecessary, collateral issues of law and fact into their straightforward breach of contract action against Arista.  As Movants were not parties to the contract at issue in Plaintiffs' case, Plaintiffs argue that Movants have no direct interest in the action that would justify their intervention.

For the reasons set out herein, Movants' Motion to Intervene is DENIED.

## I. FACTUAL BACKGROUND

The Court assumes that the Parties are familiar with the factual background of this case as set forth in Plaintiffs' First Amended Complaint and reviewed in pertinent part by the Court's Memorandum and Order of today's date, granting in part and denying in part Defendant's Motion to Dismiss the Amended Complaint.  In addition to those facts, Movants assert additional facts relevant to their Motion to Intervene that the Court will review briefly here.

In or about 1967, Plaintiff Alan Longmuir, Plaintiff Derek Longmuir, Movant Gordon Clark, and others, formed a musical group known as The Saxons.  (Intervenors' Complaint ("Int. Compl.") ¶ 15)  In or about August 1968, the group changed its name from The Saxons to the Bay City Rollers (the "Rollers").  (Id.)

On or about September 15, 1971, the Rollers entered into an agreement with Bell Records[1] (the "1971 Agreement").  At that time, the Rollers consisted of Plaintiffs Alan and Derek Longmuir, Movant Gordon Clark, and Archie Marr, Eric Manclark, and Neil Henderson, who are not parties herein and are not seeking to intervene in this action.  (Id. ¶ 17)  Pursuant to the 1971 Agreement, all master recordings made under the Agreement, and all related derivatives and performances, were "entirely and forever the property of [the record company]," in exchange for which, the Rollers were to receive various royalty amounts for records sold by the company.  (Id. ¶ 18)

Between September 1971 and January 1979, the Rollers went through a number of personnel changes.  In November 1971, Eric Manclark left the Rollers.  (Id. ¶ 19)  Neil Henderson and Archie Marr separated from the Rollers in or about March 1972, at which

_____

[1] Bell Records merged three years later with other labels to form Arista Records, Inc., which succeeded to the rights and obligations of Bell Records under the 1971 Agreement.  Defendant Arista Records LLC later succeeded to the same rights and obligations.

time Plaintiff Eric Faulkner and John Devine, who is not a party
to this action, joined the group.  (Id.)  At or about that time,
Movants allege that the band members "orally and/or impliedly
agreed that all moneys generated from their participation in the
band . . . would be divided evenly among them."  (Id. ¶ 20)  In
or about November 1973, Movant Gordon Clark separated from the
Rollers and Plaintiff Leslie McKeown joined the group.  (Id. ¶
21)  In or about January 1974, John Devine left, and was replaced
by Plaintiff Stuart Wood.  (Id. ¶ 22)

     On or about July 1, 1975, the Rollers engaged an entity
called ALK Enterprises to manage their affairs with Defendant
Arista, and through ALK, entered into a new agreement with
Arista, (the "1975 Agreement") which had by then succeeded Bell
Records.  The group at the time of signing the 1975 Agreement
consisted of Plaintiffs Alan Longmuir, Derek Longmuir, Eric
Faulkner, Stuart Wood, and Leslie McKeown.  (Id. ¶¶ 23-24)  Under
that Agreement, all records and reproductions made by the Rollers
became "the property of Arista in perpetuity," in exchange for
which the Rollers were to receive various royalty amounts for
records sold.  (Id. ¶ 24)

     On or about April 1, 1976, Plaintiff Alan Longmuir separated
from the Rollers and Movant Ian Mitchell joined the group.
Movants allege that Ian Mitchell succeeded to Alan Longmuir's
rights and obligations under the 1975 Agreement, and that "Arista

agreed and understood that this new member would receive royalties pursuant to the [1975 Agreement]."  (Id. ¶ 25)  Movants further allege that "at or about the same time, each of those band members orally and/or impliedly agreed that all monies generated from their participation in the band, including royalties received from recordings in which they were involved as performers, would be divided evenly among them."  (Id.)  On or about November 10, 1976, Ian Mitchell left the group and Movant Pat McGlynn joined the Rollers.  (Id. ¶ 27)  Movants allege that Pat McGlynn succeeded to Ian Mitchell's rights and obligations under the 1975 Agreement, and that "Arista agreed and understood that this new member would receive royalties pursuant to the [1975 Agreement]."  (Id.)  Movants further allege, again, that "at or about the same time, each of those band members orally and/or impliedly agreed that all monies generated from their participation in the band, including royalties received from recordings in which they were involved as performers, would be divided evenly among them."  (Id. ¶ 28)

On or about May 6, 1977, Movant Pat McGlynn separated from the Rollers, (id. ¶ 30) and in or about November 1978, Plaintiff Alan Longmuir rejoined the group.  (Id. ¶ 31)  In or about November 1978, Plaintiff Leslie McKeown separated from the Rollers, and in or about January 1979, Plaintiff Duncan Faure joined the group.  (Id. ¶ 32)

Although Movants fail to mention it in their Complaint, the former members of the Rollers that are named Plaintiffs to this action, and only those Rollers, entered into two settlement agreements in 1981, upon the band's break-up. (First Amended Complaint ("Am. Compl.") ¶¶ 58-67)  In the first agreement, with ALK, (the "1981 ALK Agreement"), the Rollers regained their royalty rights from ALK. (Id. ¶ 60)  Pursuant to that agreement, ALK assigned to Plaintiffs all of its "right, title and interest in and to" the 1975 Agreement, and "any and all payments or other benefits due at any time after" February 28, 1979. (Id.) Further, ALK assigned to Plaintiffs "all right, title and interest" in any claims that ALK had or has against Arista, in connection with any of the agreements between them. (Id. ¶ 61) Plaintiffs signed a second agreement in 1981 with Arista (the "1981 Arista Agreement"), which provided that Arista would "pay royalties to you [the Rollers] earned from and after February 28, 1979 in respect of master recordings you [the Rollers] recorded under the Agreement, but only to the extent such payments would otherwise have been payable to ALK . . ." (Id. ¶ 63)  In exchange for these payments, Plaintiffs agreed to release Arista from any obligations and payments owed prior to February 28, 1979, except that Plaintiffs retained the right to assert claims based upon certain audits that had been prepared regarding that time period. (Id. ¶ 67)

In the years since the 1981 agreements were executed,
Movants allege that they have variously participated in a number
of Rollers "reunion" tours, and have performed and recorded songs
with Plaintiffs on at least one album.  (Id. ¶¶ 34-35)  Movants
further allege that Arista and its licensees have released
numerous compilations and greatest hits collections, including
original Rollers sound recordings in which Movants performed.
(Id. ¶ 36)  "Throughout the entirety of [the Rollers']
relationship with Arista," Movants allege that "Arista and its
representatives continually acknowledged to [the Rollers]
(including Intervenors), orally and in writing, directly and
indirectly, that it would pay the royalties due . . ."  (Id. ¶
38)  Yet Arista has still not paid the royalties, alleging that
it does not understand how the money should be distributed among
the various former band members.  (Id. ¶¶ 37-38)

Plaintiffs filed this action against Defendant to recover
unpaid royalties and accounting statements due under the 1981
Agreement on March 20, 2007.  Movants moved to intervene in that
action on April 27, 2007.  Defendant filed a Motion to Dismiss
Plaintiffs' First Amended Complaint on August 6, 2007, which the
Court grants in part and denies in part today by separate Order.
Only Plaintiffs' breach of contract action remains.

## II. DISCUSSION

Movants seek to intervene and be made parties to Plaintiffs'
above-captioned action against Arista pursuant to Fed. R. Civ. P.
24.  Movants were not signatories to the 1981 Arista Agreement at
dispute in Plaintiffs' action.  However, Movants allege an
interest in the royalties that are the subject of Plaintiffs'
action that justifies their intervention.  (Movants' Memorandum
of Law in Support of Motion to Intervene, at 1)  Movants seek to
intervene either as a matter of right under Fed. R. Civ. P.
24(a), or by permission of the Court under Rule 24(b).

### A.    Intervention as of Right

Under Rule 24(a) of the Federal Rules of Civil Procedure the
Court must permit intervention by a non-party if it satisfies a
four-part test:

> "On [1] timely motion, the court must permit anyone to
> intervene who . . . [2] claims an interest relating to
> the property or transaction that is the subject of the
> action, and [3] is so situated that disposing of the
> action may as a practical matter impair or impede the
> movant's ability to protect its interest, [4] unless
> existing parties adequately represent that interest."

Rule 24(a)(2); see Washington Elec. Co-op., Inc. v. Massachusetts
Mun. Wholesale Elec. Co., 922 F.2d 92, 96 (2d Cir. 1990).  All
four parts of the test must be satisfied for a proposed
intervenor to qualify for intervention as a matter of right.
Washington Electric, 922 F.2d at 96.  Failure to satisfy any one

8

of the four requirements is sufficient ground to deny the motion. In re Holocaust Victim Assets Litig., 225 F.3d 191, 197-98 (2d Cir. 2000). Putative intervenors' well-pleaded allegations are assumed to be true for the purposes of deciding a motion to intevene. See Oneida Indian Nation of Wisc. v. New York, 732 F.2d 261, 264-65 (2d Cir. 1984).

There is no dispute here that Movants' motion is timely. However, Movants fail to satisfy all three of the remaining requirements of Rule 24(a)(2). As such, they do not qualify for intervention as of right in this action.

The second prong of the four-part test under Rule 24(a)(2) requires that putative intervenors' interest in the proceeding be "direct, substantial, and legally protectable." Washington Electric, 922 F.2d at 97. "An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." Id. Intervenors "must take the pleadings as they find them"; Rule 24(a)(2) "is not intended to allow for the creation of whole new suits by intervenors." Id.

Here, "the property or transaction which is the subject of the action" in which Movants seek to intervene is the royalties or payment of royalties by Arista to Plaintiffs under the 1981 Agreement signed by Defendant and Plaintiffs. Movants do not claim to have been parties to that agreement, but rather, allege

that the Rollers and Arista made other oral and written agreements with Movants regarding how the royalties due from Arista would be divided among them.  (Int. Compl. ¶¶ 20, 25, 28)

Movants' claims are collateral to Plaintiffs' simple breach of contract action against Arista.  The claims do not rise from Plaintiffs' pleadings or cause of action, but instead, seek to inject new questions of both law and fact surrounding alleged, collateral oral and written agreements into Plaintiff's relatively straightforward claim.  Indeed, any interest by Movants in the royalties at dispute here is entirely "contingent upon" Plaintiffs' recovery against Arista "before it [will] become[] colorable."  Washington Electric, 922 F.2d at 97.  As Movants aim "to intervene not to advance the underlying litigation but to raise a new issue concerning how much of the recovery [Plaintiffs] must allocate to [Movants]," intervention here is inappropriate.  Compagnie Noga D'Imp. Et D'Exp. S.A. v. The Russian Fed'n, 2005 WL 1690537, at *4 (S.D.N.Y. July 20, 2005).  Movants' purported interest in this action fails the second factor of the four-part test.

As to the third factor, the Court finds that any interest in this action by Movants will not be affected, impaired or impeded by the disposition of the action.  The sole question at issue is whether and how much Plaintiffs stand to recover in royalties from Arista pursuant to the contract executed between those

10

Parties in 1981.  Movants' claims are against Plaintiffs and
Arista for Movants' alleged <u>share</u> of the royalties, due not under
the 1981 Agreement with Arista, but pursuant to alleged
collateral oral and written agreements.  Movants' participation
in this suit has nothing to do with whether or how much
Plaintiffs may or may not recover in their breach of contract
action against Arista, and disposition in the instant action
without Movants' participation will not bar under the doctrines
of <u>res judicata</u> or collateral estoppel any future attempt by
Movants to pursue their share of the royalties against
Plaintiffs.  Movants fail to satisfy the third part of the Rule
24(a)(2) test.

Last, Movants have made no showing sufficient to suggest to
this Court that their alleged interest in this action will be
inadequately represented without their participation.  "While the
burden to demonstrate inadequate representation is generally
minimal, [courts] have demanded a more rigorous showing of
inadequacy in cases where the putative intervenor and a named
party have the same ultimate objective."  <u>Butler, Fitzgerald &</u>
<u>Potter</u>, 250 F.3d at 179 (2d Cir. 2001).  Movants and Plaintiffs
share the same goal in the action before the Court: the full or
largest possible recovery of royalties from Arista, pursuant to
its agreement with the Rollers.  Movants' alleged claim to a
share of the royalties arises only after Plaintiffs recover from

Arista, and the Court finds no persuasive evidence, or any at all, that the Rollers will not pursue their contractual claim vigorously, and toward maximum recovery of royalties allegedly due.  See Compagnie Noga, 2005 WL 1690537, at *5 (denying intervention where plaintiff and purported intervenor "share[d] a mutual interest in maximizing [plaintiff's] recovery . . . leaving [them] to wrangle later over the proper division of any recovered monies.").

As Movants fail to satisfy three of the four factors required by Rule 24(a)(2), they are not entitled to intervention in this case as a matter of right.


B.    Permissive Intervention

Rule 24(b) provides that upon timely motion, "the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b).   Whether to allow intervention is within the Court's discretion.  Compagnie Noga, 2005 WL 1690537.  As the Court has already determined, Movants' proposed action does not share a question of law or fact in common with the main action before the Court – that is, Plaintiffs' breach of contract claim against Arista under the Parties' 1981 Agreement.  As such, the Court is not persuaded to permit intervention under Rule 24(b).


12

III. CONCLUSION

For the reasons stated above, Movants' Motion to Intervene in this action is hereby DENIED.


SO ORDERED.

Dated:     New York, New York
           March 5, 2009

                                    _Deborah A. Batts_
                                      Deborah A. Batts
                              United States District Judge

13